Childs *v.* Wyman.

ALFRED A. CHILDS ET AL. *versus* SAMUEL D. WYMAN.

Where one not the payee of a negotiable note signed his name on the back, without date, the presumption of law arises that he so wrote it at the date of the note, or agreed to do so, and did subsequently, in pursuance of such agreement.

The words "*without recourse*" written under the signature of one not the payee, upon the back of a note, can have no legal effect, and are mere surplusage.

If one not otherwise a party to a note write his name upon the back of the same the day after its date and execution by other parties, but in pursuance of an agreement to do so at the time it was made, he is liable as an original promisor.

EXCEPTIONS were taken to the rulings of MAY, J.

This action is ASSUMPSIT on account annexed for $200.00, and also on note for $600.00, dated March 15, 1855, signed by Richards & Barker, payable to A. A. Child in ninety days, with the defendant's name on the back of the note, to whose name was added the words "without recourse."

The defendant is declared against as maker of the note. A. A. Child afterwards indorses to his firm, the plaintiffs.

The judge instructed the jury that if the defendant put his name on the note when it was given to Child in payment of the plaintiffs' account, they would be entitled to recover of the defendant, notwithstanding he added the words to his signature, "without recourse," as appears upon the note. The addition of these words under such circumstances, would not limit or discharge the defendant from the liability which his signature upon the note would otherwise impose; that if the defendant did not put his name upon the note on

the evening it was delivered to the plaintiff, Childs, in payment of the plaintiffs' account, still, if the plaintiff, Childs, received it under an unfounded apprehension or belief created by the language and conduct of the defendant that the defendant was to sign or indorse it so as to be liable for it, and under such misapprehension the plaintiff, Childs, receipted the account the plaintiffs had against the defendant, and permitted him to take it, and if after having done so, and discovering that the defendant had not so signed or indorsed it, the plaintiff, Childs, thereupon asked him to do so, and he declined, and then on the next morning or next but one, he called upon the defendant and urged him to sign it or indorse it as an act of justice, and the defendant did then indorse or put his name upon the back of it, as it now appears, and the plaintiff, Childs, accepted it as a binding signature upon the note, such signing and delivery of the note will make the defendant liable as an original promisor, in the same manner as if he had put his name upon the note at the time of its delivery, the evening before, notwithstanding he added to his signature the words " without recourse," and before signing it had stated to the plaintiff, Childs, that he would not indorse it to be holden.

He further instructed the jury that if they should be satisfied that the defendant, at the time, or immediately before he gave the note to the plaintiff, Childs, falsely and fraudulently affirmed to him that the makers, Richards & Barker, were good, or perfectly good, as an inducement to the plaintiff, Childs, to take it, and if such affirmation was not true, and the defendant knew it to be so, or had reasonable grounds to believe that said Richards & Barker had failed, and were insolvent when he so stated, such false affirmation would authorize the plaintiffs, for whom the plaintiff, Childs, was acting, to treat the note as a nullity, and to recover for their original account for which the note was taken upon the count inserted in the writ for that purpose, but the plaintiffs are not bound so to treat the note, and if the jury find it was signed upon the back by the defendant so as to be an origi-

nal promisor in the manner before stated, the plaintiffs may, notwithstanding such fraud practiced upon them, recover upon the note.

That if the jury should find that it was agreed between the plaintiff, Childs, and the defendant, that the plaintiffs should take the note of Richards & Barker, payable to them in payment for their account, without any liability on the part of the defendant, and such contract was fairly and honestly made, without any false representations having been made by the defendant, as to the ability of Richards & Barker to pay; and the plaintiffs, by Mr. Childs, did so take it in payment of their account, and the defendant, subsequently, and not as a part of the settlement of the plaintiff's claim, put his name upon the note, then the plaintiffs could not recover on the note without showing some consideration for such indorsement.

The jury returned a verdict for the plaintiffs, finding a special verdict against the defendant, as an original promisor upon the note declared on.

*H. Ingalls,* counsel for the plaintiff.

This case is presented on exceptions by the defendant.

The action is upon an account annexed, and a promissory note.

No question is made as to the account.

The note is signed on the back of it by the defendant, and at the time of signing, he added to his signature the words, " without recourse."

1. It has been repeatedly held in Massachusetts and this state, that if a person puts his name on the back of a note, he not being the payee, before it is issued, he is to be regarded as an *original promisor*, in the same manner as if he had signed the note upon its face.

2. In this case, what is the effect of the words, " without recourse ?"

If a person, not the payee of a note, signs his name upon the back of it, and over his signature writes the words,

"waiving demand and notice," his liability is not changed from that of a *promisor* to that of an *indorser.* `Lowell v. Gage,* 38 Maine R., 35.

The words, "waiving demand and notice," have reference to an *indorsement,* and so also do the words "without recourse." If the former words do not change the character of the signature, by the same reasoning the latter words should not. I am not now inquiring as to the effect of the words upon the liability of the party signing, provided he is an *indorser,* for it would be very different, but in determining whether the party signing is a *promisor* or an *indorser,* the words "without recourse," should have no greater force than the words "waiving demand and notice." So far as the latter question is concerned, they are words of the same meaning and effect.

The defendant is, therefore, an original promisor. His liability is the same as if he had signed his name under that of Richards & Barker, and added to his signature the words "without recourse." If he had so signed this note, is there any pretence that he would. not be holden? He must be presumed to have put his name to the note for some purpose. Accordingly, where a note was written, "Borrowed of J. S., £50, which I promise *not* to pay," it has been held to be a good promissory note. Story on Promissory Notes, s. 12; Chitty on Bills, p. 38.

3. Besides, in this case the writing the words "without recourse," to his signature, was a fraud on the part of the defendant. The plaintiff, Childs, saw the defendant writing upon the note, and supposed he was putting his signature there, as he, Childs, had requested. The stage was in waiting for Childs, and he took the note without reading or comprehending the words upon it.

4. It is contended by the defendant that his name was not put upon the note till after it had been delivered to the plaintiff, Childs, and therefore that the note is without consideration as to him.

The note was received in part payment of an account of

the plaintiff's against the defendant. The signing by the defendant was a part of that settlement. The case abundantly shows that it was the expectation of Childs that the note should be signed by the defendant, and that it was not the intention of Childs to release the defendant from liability, and take the note of men of whom he had no knowledge. He wanted additional security. The fact that it was not signed on the evening of the settlement, was the result of a mistake and misapprehension on the part of the plaintiff, Childs. The signing by the defendant was simply a correction of that mistake, and forms a part of the original transaction. This is a much stronger case for the plaintiffs than *Moies* v. *Bird,* 11 Mass. R., 436, where the plaintiff prevailed. That is a case directly in point, and fully sustains the instructions given in this case.

5. The instructions might have been much more favorable for the plaintiff. There were false and fraudulent representations made by the defendant, as to the responsibility of Richards & Barker. Suppose Childs had taken the note under such representations, with no agreement or expectation that the defendant should sign the note. Such a transaction would be a nullity. The account would, if the plaintiff saw fit so to treat it, be still unpaid. If, under such circumstances, the defendant signed the note days or even weeks after it was delivered, there should be a good consideration, for it would be in settlement of an account still in force, by reason of fraudulent practices on the part of the defendant. In this case, even if the signing by the defendant was a separate transaction, there was a good consideration.

6. The note was payable to Childs or order, and the name of the defendant was put on the note before it was indorsed by Childs to his firm, and before it was accepted by the firm.

7. But the closing portion of the charge to the jury is all the defendant could ask, and leaves the defendant no ground whatever of complaint. All that went before is qualified and restricted by this portion, in such manner as to give the defendant the benefit of all he had proved, provided the jury

gave credit to him and his witnesses, which it appears the jury did not do.

*W. Hubbard,* counsel for the defendant, in support of the exceptions.

The case finds that the defendant, being indebted to the plaintiffs in account, procured a negotiable note of Richards & Barker, payable to A. A. Childs, one of the plaintiffs, to be received in part payment; that it was so received, and the account discharged.

On the next day Childs called on the defendant to "indorse" the note, stating that this was the agreement. Wyman denied that he agreed to do so; and on the trial there was testimony tending to show that Wyman did, and that he did not, agree to do so. Childs urged Wyman to indorse the note. Wyman refused to do so, in such manner as to be holden, and thereupon wrote his name *on the back,* adding the words "*without recourse.*"

The first instruction is erroneous.

The words "without recourse" are legally operative to exempt the defendant from liability to pay the note. *Davis* v. *Sawtelle,* 30 Maine R., 389; Chitty on Bills, 228, 10th Am. ed.; Story on Notes, s. 146; *Waite* v. *Foster,* 33 Maine R., 424.

If Wyman agreed to indorse the note in blank, in the usual manner, he did not do so; and the plaintiffs, as indorsees, can recover only upon the contract as made, and not upon one made with Childs and never executed, and which could not be negotiated to them.

To hold, as the instructions state, that the defendant is liable to pay the note, if he agreed to put his name on it, *is to make a contract for him directly opposed to his written stipulation made at the time on the back of the note.* It is to make him say in substance, I promise to pay the note, when he made a declaration in writing upon it, at the time, *that he did not so promise, and that he would not be holden.* And it does this by admitting parol testimony to have the effect,

not only to vary his written stipulation, but to destroy it utterly.

And it does so, in the face of the decision of this court, that the legal effect of a blank indorsement cannot be varied by parol testimony.   *Crooker* v. *Getchell*, 23 Maine R., 392.

Much less can it be received to destroy the legal effect of a written stipulation, introduced expressly to qualify the indorsement.   *Smith* v. *Frye*, 14 Maine R., 457; *Haywood* v. *Perrin*, 10 Pick. R., 228; Story on Notes, s. 473.

The instructions substitute a parol contract to pay, in place of a *written denial* of all liability; and make the defendant promise absolutely to pay, when he has declared in writing on the note that he will not be bound to pay it.

The instruction which states, " that if the defendant put his name on the note, when it was given to Childs in payment of the plaintiffs' account, they would be entitled to recover of the defendant," was erroneous for another reason. It took from the consideration of the jury all the facts and circumstances respecting the intention of the parties in having his name upon it, and placed the right to recover on the simple fact alone considered, that the defendant put his name upon the note; while all the cases, however they may differ in other respects, agree that all such facts and circumstances should be considered to ascertain the intentions of the parties, and to determine the effect of such kind of signatures. Story on Notes, ss. 479, 480.

The intentions of the parties are to be thus ascertained, to interpret the language used, but not vary or set it aside.

It was also calculated to mislead the jury, by stating to them what the effect would be if the defendant put his name on the note " when it was given to Childs," when there was no testimony in the case tending to prove that it was put on, at the time—the proof being clear and uncontradicted, that it was not put on till the day after the note was given to Childs.

In *Irish* v. *Cutler*, 31 Maine R., 536, it was held, that when such a note was indorsed by a third person, before an in-

dorsement by the payee, the presumption of law would be, that he designed to become an original promisor. But the case does not decide, that when the facts and circumstances attending the signature are proved, that they are not to determine the effect of the signature. Nor do the cases of *Malbon* v. *Southard*, 36 Maine R., 147, and *Leonard* v. *Willis*, 36 Maine R., 266, so decide, and I am unable to find any case that does so decide.

The testimony in this case shows, that if the defendant was to be liable at all, he was to be liable as indorser, which might have been effected by Childs' indorsement and the defendant's indorsement. Yet the instructions required the jury to find that the defendant became an original promisor, without regard to the testimony proving that he was to be an indorser.

Another error consists in allowing the plaintiffs, *as indorsees* of Childs, to have the benefit of any special agreement or representation made between Childs and the defendant, such as the alleged agreement made between Childs and the defendant, that the defendant would become liable to pay the note, which was never carried into effect, and the alleged representations made respecting the solvency of Richards & Barker. These constituted no part of the note—they were not negotiable, and could not be transferred to the plaintiffs.

Even a *written* guaranty made upon a note is not negotiable, and the benefit does not pass to an indorsee. *Springer* v. *Hutchinson*, 19 Maine R., 359 ; *Myrick* v. *Husey*, 27 Maine R., 9 ; Story on Notes, s. 481.

An agreement or representation not reduced to writing, and signed by the party, is incapable of being negotiated. Nor can an indorsee avail himself of the benefit of it, or be prejudiced by it, unless it operates upon the contract itself. And hence it is, that a mere promise made to the holder of a note to pay it, will not pass to a subsequent indorsee. *Little* v. *Blunt*, 9 Pick. R., 488.

I submit, therefore, if the defendant, by his language and conduct, had authorized Childs reasonably to entertain any

Childs *v.* Wyman.

belief, and thereby induced him to accept the note, the plaintiffs, *as indorsees*, could derive no rights or benefit from it, for the recovery of the note. Yet the instructions, erroneously, I insist, allowed the plaintiffs, as indorsees, to have the advantage of agreements, belief, and representations, existing—if they existed at all—only in verbal communications between Childs and the defendant.

HATHAWAY, J. Assumpsit on a joint and several promissory note, signed by Richards & Barker and the defendant, payable to A. A. Childs or order, and by him indorsed to the plaintiffs. The defendant signed the note on its back, and wrote under his signature the words "*without recourse.*" The law is settled in this state, that the defendant's signature, on the back of the note, had the same effect to make him an original promisor, as if he had signed on its face, with Richards & Barker, and there being no other date than the date of the note, the presumption is, that he signed it when they did, or agreed to sign it, and subsequently did so, in pursuance of such agreement.

The words "*without recourse*" can have no legal effect, touching the defendant's liability; they are words applicable to an indorser—not to an original promisor, and are therefore mere surplusage. *Lowell* v. *Gage et als.,* 38 Maine R., 35.

If the defendant intended, by writing those words under his name, to avoid the liability incurred by his signature, that would not avail him. In a case where a note was written thus: "Borrowed of J. S., £50, which I promise *not* to pay," it was rightly held that "the word *not* shall be rejected, for a man shall never say, I am a cheat and have defrauded." Bayley on Bills, 6, and cases cited by the plaintiff's counsel.

The case finds that the defendant did not sign the note till the next day after it was signed by Richards & Barker, and the plaintiff contends that the evidence shows that he did it then, in pursuance of an agreement to do so at its in-

29

ception, and the jury found specially that he was liable as an original promisor.

Considering the fact that by the defendant's signature to the note, the *presumption* is, that he was an original promisor, in connection with the evidence in the case, we are of opinion that he was not aggrieved by the instructions given the jury upon that question. This case does not appear to be essentially distinguishable from *Moies* v. *Bird*, 11 Mass. R., 436. See also *Sampson.* v. *Thornton*, 3 Met. R., 275.

*Exceptions overruled.*