INTERSTATE CONSTRUCTION CO. *v.* UNITED STATES FIDELITY & GUARANTY CO.

1. CONTRACTS—CONSTRUCTION — SEVERAL INSTRUMENTS CONSTRUED TOGETHER.

   Where several instruments are made at one and the same time having relation to the same subject-matter they must be taken to be parts of one transaction and construed together for the purpose of showing the true contract between the parties.

2. SAME—BREACH OF CONTRACT—EVIDENCE—ADMISSIBILITY.

   In an action for damages by the general contractor on a public building against a subcontractor for breach of contract in refusing to perform on the ground that plaintiff's

delay until July 17th in having the building ready for defendants to begin work amounted to a breach thereof, a telegram from plaintiff to defendants bearing the same date as the contract stating that "you are to start work about May 1st," *held*, admissible for the purpose of showing the true contract between the parties, although the contract provided that the work should be "commenced promptly upon notice."

3. SAME.

Where the evidence clearly shows that plaintiff's agent notified defendants that it was expected work would begin about May 1st, the admission of the telegram, whether admissible or not, *held*, not prejudicial.

4. SAME—BREACH—BURDEN OF PROOF.

In order to justify defendants' refusal to perform, the burden was upon them to establish, by a fair preponderance of the evidence, that the neglect of plaintiff was so unjustifiable, unreasonable, and inexcusable as to amount to a breach of the contract.

5. SAME—CHANGED CONDITIONS—ADMISSIBILITY.

Defendants having elected to repudiate the contract, claiming a breach, evidence of the changed condition of the labor market in the meantime, which would have imposed upon them an extraordinary and unwarranted burden, *held*, admissible.

6. TRIAL—INSTRUCTIONS—REQUESTS TO CHARGE.

It was not error for the court below to refuse plaintiff's specific requests to charge, where the charge as given fully protected his rights, and all proper requests were either given or covered.

7. SAME—REMARKS OF COUNSEL.

A ruling of the court below sustaining appellant's objection to remarks of counsel, and adding "I do not think that makes any difference and need not be considered by the jury," *held*, not reversible error.

Error to Wayne; Shepherd, J., presiding. Submitted April 29, 1919. (Docket No. 14.) Decided October 6, 1919.

Assumpsit by the Interstate Construction Company, Limited, against the United States Fidelity & Guar-

anty Company and others on a bond.  Judgment for defendants.  Plaintiff brings error.  Affirmed.

*Watson, Safford & Shepherd* (*Frank T. Lodge,* of counsel), for appellant.

*Douglas, Eaman, Barbour & Rogers* (*Lewis W. Mc-Candless,* of counsel), for appellees.

Plaintiff as general contractor had entered into a contract with the United States for the erection of a post office building at Franklin, La.  On April 22, 1913, plaintiff entered into a sub-contract with defendants Montagne, by the terms of which said defendants agreed to furnish:

"All of the labor and do and perform all the work required in constructing and putting in place the mortar and concrete, stone work, brick work, structural terra cotta, metal work, roofing and sheet metal work, plastering, interior marble and terazzo, wood work, hardware, painting and varnishing, glazing, plumbing marble work and terazzo floors for toilet rooms, under the head of plumbing, and approaches.  All the material to be furnished by the party of the first part delivered on the site, party of the first part will also permit the second party to use any tools and apparatus which are owned by the first party and on the premises.  *  *  *

"This contract is to include all labor to complete this building and approach walk except pile driving and main building excavation labor and labor in connection with mechanical equipment, but includes marble setting, terazzo floor labor and carpenter labor in toilet rooms in connection with mechanical equipment."

Section 2 of the contract follows:

"And the said party of the second part further covenants and agrees that the labor and material and the work herein agreed to be performed shall be commenced *promptly upon notice from first party to said second party,* that the said building and premises are

ready for the installation of the above mentioned labor, materials and work, and that the same shall be carried on in the order and manner as provided in said specifications and with such dispatch and in such manner as to not cause undue delay to other work on said building, and in such a manner as shall insure the completion of said work in all its parts by November 1, 1913. And it is expressly covenanted and agreed by and between the parties hereto that time is and shall be considered as of the essence of the contract on the part of the second party, and in the event that the second party shall fail in the due performance of the entire work to be performed under this contract, by and at the time herein mentioned or referred to, the said second party shall pay unto the first party as and for liquidated damages, and not as a penalty, the sum of forty ($40.00) dollars for each and every day the said second party shall be in default, which said sum the said first party shall have the right to deduct from any moneys in its hands otherwise due or to become due, to said second party, or to sue for and recover compensation or damages for the non-performance of this contract at the time or times herein stipulated or provided for. Provided, however, that for any delay to second party which shall be caused by the first party's action or order, or by the order of the said supervising architect, the time fixed for the final completion of the work herein provided shall be extended for as many days as shall equal the delay caused to second party by any of the reasons above mentioned."

On the day of the date of the contract the following telegram was sent by plaintiff to defendants Montagne Brothers:

(Dated April 22, 1913.)
"Piles completed, if you include putting in foundations no excavating will send contracts for sixty-five hundred to our representative at Franklin and you can sign up there, you to start work about May first.
"Answer."

To which upon the same day Montagne Brothers replied as follows:

"We accept your offer for Sixty Five Hundred Dollars. Send contracts.

"MONTAGNE BROS."

Prior to the execution of the contract one of the defendants, R. J. Montagne, inspected the site, saw the condition of the work and testified that he was informed by plaintiff's superintendent that the piling was completed and that he could probably go to work in two or three days. Plaintiff's contract with the government, however, required that certain tests be made upon the piling before the superstructure was started. Those tests were made after some delay and resulted in an order from the government requiring plaintiff to drive some further piles. These piles were driven by plaintiff as required but the piling was not finally accepted by the government until July 10th. On July 17th plaintiff sent defendants Montagne the following communication:

"The above named building is now in such shape so you can make arrangements to start your work, and would suggest that you get your batter boards located and arrangements made for your tools and men so you can start pouring concrete about Monday, July 21st, and as your contract calls for all labor to be performed by you with the exceptions of the piling and excavation, it is part of your contract to screen the cement now in the shed before using it, also the removing of the rust from the reinforcing rods all to be done as directed by Mr. Clark, the government inspector.

"The writer will send you a complete list of all the materials and tools now on the site to be taken from the company's books and invoices upon his return to Saginaw, Mich., which you can check up as soon as it reaches you and give us a receipt for same; in the meantime such cement, sand, and gravel can be used to allow you to proceed with the work without delay. All new materials to be delivered to the site you are to be responsible for, and give us a receipt for same upon its arrival; you are also to be responsible [for]

all tools and material now on the site as soon as they are checked up and delivered to you. We are,"

Defendants Montagne in response sent the following notice to plaintiff:

"This is to inform you that on account of the great delay of time caused by your not being ready to turn the building work over to us, after your telegram of April 22d, 1913, confirmed by your letter of same date stating that work was to be started by us about May 1st, 1913, it will be absolutely impossible for us to complete the work in the time specified in the contract and unless certain changes are made in the contract, we will be unable to begin the work.

"There are certain stipulations in' the contract which, not being lived up to by you, certainly annuls same, and we would suggest that your representative call on us at once, and see what can be done with reference to getting the matter straightened out."

This was followed on July 19th with a formal cancellation of the contract as follows:

"Please take notice that the contract entered into between you and Montagne Brothers, on April 22, 1913, has expired and is at an end. The contract terminated when you failed to live up to its specifications and to the agreements made by you. As soon as we check up and see what damages we have been put to, claim will be made."

To which plaintiff replied on the same day:

"In this connection will say that we have lived up to our part of the contract to the letter, and expect you to do the same, and unless you proceed in accordance therewith, in accordance with the terms, conditions of contract and the plans and specifications, it is our intention to give you the five days' notice in accordance with contract, and if you do not proceed it is our intention to notify your bonding company, and will make a demand upon them to complete your contract.

"Hoping that you will not make it necessary to proceed against your bonding company, as outlined above, we are,"

No accommodation between the parties having been reached, plaintiff was compelled under its contract with the government to perform through other channels the labor which the defendants Montagne had by their contract agreed to perform. Suit was brought against Montagne Brothers and the defendant United States Fidelity & Guaranty Company, as bondsmen, for damages arising out of the breach of contract. No service was had on defendants Montagne. The defendant Guaranty Co. filed a plea of the general issue giving notice of the following defenses thereunder:

"(*a*) The said Interstate Construction Company did notify Montagne Brothers to begin work in accordance with said contract on or about May 1st, 1913, and in accordance with the said contract and the said notice, Montagne Brothers did prepare for the due execution on their part of said contract, did in turn enter into contracts with various parties to enable them to fulfill the said contract, but up to and including the date when they elected not to be bound further by said contract, no opportunity on the part of the said plaintiff had been given to said Montagne Brothers to proceed with the work, but on the contrary through the fault of the said plaintiff they were prevented from fulfilling the contract sued upon.

"(*b*) The said plaintiff did not provide proper materials upon which work was to be done, as provided in said contract.

"(*c*) That through the unreasonable delay on the part of said plaintiff in fulfilling its part of the contract and in enabling said Montagne Brothers to proceed with their part of the contract, causing an unreasonable delay in the execution of said contract through no fault of the said Montagne Brothers, and that on account of said unreasonable delay said Montagne Brothers had a right to rescind the said contract sued upon.

"(*d*) That said Montagne Brothers, subsequent to April 22d, 1913, did repeatedly request of the said plaintiff an opportunity to fulfill their part of said contract; that they were always ready, able and willing to fulfill their part of said contract, but through

the neglect and unreasonable delay of this plaintiff, were prevented from fulfilling their part of the contract, and had the right thereby to rescind the said contract.

"(e) That the said plaintiff, because of its failure to furnish materials, to prepare the excavations and piling necessary to be done before the said Montagne Bros. could proceed duly with their work, made it impossible for the said Montagne Brothers to perform their said contract.

"(f) That because of the unreasonable delay on the part of the plaintiff in fulfilling its part of said contract and because of the unreasonable delay which the said plaintiff caused the said Montagne Brothers in the fulfillment of their contract, the said Montagne Brothers did have a right to rescind the said contract and consider the same at an end.

"(g) That a material provision of said contract sued upon subjected the said Montagne Brothers to a penalty in the sum of Forty Dollars ($40.00) per day from and after November 1st, 1913, provided the obligations on the part of the said Montagne Brothers were not fulfilled upon that date, and yet without any waiver of said provision and being a material part of said contract, the plaintiff further, by its unreasonable delay in preventing the said Montagne Brothers from fulfilling their part of said contract, did justify the said Montagne Brothers in rescinding the contract and treating it as at an end, and were thereby relieved from any obligations imposed by said contract.

"(h) That the said contract did specify and provide a time certain for the completion of the obligations of said Montagne Brothers, and yet through the unreasonable delay on the part of the plaintiffs did make it impossible for the said Montagne Brothers to fulfill their obligations within the time specified.

"(i) That the said contract sued upon presupposed an opportunity for due and diligent execution on the part of said Montagne Brothers of their obligations under said contract, and yet, through the fault of the said plaintiff and because of the delay due entirely to the fault of the said plaintiff, the said right of Montagne Brothers was deprived them wrongfully by said plaintiff, thereby fully justifying them in rescinding the said contract and treating it as at an end."

The case was tried at considerable length and submitted to the jury under an exhaustive charge in which we find the following:

"Under the well settled principles of law applicable to contracts of this character, I charge you that when the defendants, Montagne Brothers, contracted to do and perform the labor referred to in said contract, under the terms and conditions therein set forth, they were bound to make it good, regardless of the cost or difficulty to them in so doing, unless you should find that they were excused from performance by reason of unreasonable and unjustifiable delays on the part of the plaintiffs in the case, which amounted to an actual breach of the contract on their part, and in this class of cases I charge you that the mere delay complained of is not in itself sufficient to justify the defendants, Montagne Brothers, in refusing to perform the contract, and before they can claim the right to be set free they must satisfy you as I have already told you in effect by a fair preponderance of evidence, that the action of the plaintiffs, independent of other contributing causes, occasioned such an unreasonable delay as to impose a material and unnecessary burden upon the Montagne Brothers."

The jury returned a verdict in favor of the defendants. A motion for the entry of judgment in favor of the plaintiff notwithstanding the verdict was later denied and judgment rendered for defendants upon the verdict.

BROOKE, J. (*after stating the facts*). Counsel for appellant review the case in this court under a large number of assignments of error, grouped as follows:

(1) Erroneous admission and exclusion of testimony and evidence.

(2) Erroneous instructions to the jury and refusals to charge as requested.

(3) Refusal to direct verdict for the plaintiff.

(4) Was the plaintiff prejudiced by certain remarks of counsel?

These will be considered in their order.

1. Under this head there are many assignments of error, but in oral argument only two were discussed. Those only will be considered as we are satisfied that the others are without merit.

*a.* It is asserted first that it was prejudicial error for the court to admit in evidence the telegram of April 22d. This telegram contained the language:

"You to start work about May 1st."

It is the contention of plaintiff that inasmuch as the formal contract provided that work by the subcontractors thereunder should be "commenced promptly upon notice," the admission of the telegram in question was a violation of the rule that all antecedent negotiations must be held to be covered by the contract itself. In this connection it is to be noticed that the telegram and contract bear the same date, April 22, 1913; both were transmitted upon the same day, the contract by mail through Constantine, plaintiff's agent, and the telegram directly. Both papers had reference to the same subject-matter and were parts of a single transaction and both may be examined for the purpose of ascertaining the agreement of the parties. That agreement would appear to be that the subcontractor should commence work promptly upon notice as stated in the contract and,—

"about May 1st, as explained in the telegram."

There seems to be no question that where several instruments are made at one and the same time having relation to the same subject-matter they must be taken to be parts of one transaction and construed together for the purpose of showing the true contract between the parties. *Sutton* v. *Beckwith,* 68 Mich. 303; *Singer Manfg. Co.* v. *Haines,* 36 Mich. 385. See, also, *Gould* v. *Magnolia Metal Co.,* 207 Ill. 172 (69 N. E. 896). We are of opinion that the telegram in ques-

tion was admissible in evidence, but, whether admissible or not, its admission was apparently not harmful to plaintiff because the evidence clearly shows that the plaintiff expected and intended that defendants Montagne Brothers should commence the work about May 1st and that defendants were so notified by Constantine, plaintiff's agent, on or about April 25, 1913. The ultimate fact having been abundantly proven by evidence *dehors* the telegram, its admission cannot have been prejudicial to plaintiff.

*b.* Defendants were permitted over objection to introduce evidence tending to show that labor in the vicinity of Franklin was comparatively cheap and plentiful during the spring and summer but that it was scarce and high during the fall and winter by reason of the fact that during the latter period the sugar campaign was on in that region, affording employment at good wages to large numbers of men. In this connection it should be borne in mind that defendants claimed the right to refuse performance of the contract by reason of the unwarranted and unreasonable delay on the part of plaintiff, which delay, had defendants performed, would have imposed upon defendants a material and unnecessary burden. This question was submitted to the jury by the court under an instruction that in order to justify the subcontractor's refusal to perform the contract defendants must establish—

"by a fair preponderance of the evidence in the case that the delays complained of due solely to the acts or neglect of the plaintiff, were so unjustifiable and unreasonable and inexcusable as to amount to a breach of the sub-contract on plaintiff's part,"

—and in this connection the court refused to instruct the jury as requested by plaintiff that in order to excuse the defendants from performance the delay must be—

"such an unreasonable delay as to amount to an intimation of an intention to abandon and altogether refuse performance."

The court, however, did instruct the jury that the delay must have been—

"such an unreasonable delay as to impose a material and unnecessary burden upon the Montagne Brothers."

The record shows conclusively that it was within the contemplation of all the parties that the work to be performed by the defendants under the sub-contract was to commence within a reasonable time after May 1st. It further shows that defendants prepared, at considerable expense, to commence performance shortly after that date. A delay of nearly three months ensued on account of plaintiff's failure to get the piling and foundation in proper shape to permit defendants to undertake the performance of their part of the contract. In the meantime labor conditions had materially changed or would change before it would be possible for the defendants to complete. Having elected to repudiate the contract, by reason of the antecedent breach thereof by the plaintiff we think it was competent for defendants to show that performance thereof under the changed conditions occasioned by the unwarranted delay would have imposed upon them an extraordinary and unwarranted burden.

2. It is asserted by counsel for plaintiff that the court erred in refusing certain requests to charge and in the charge as given. Plaintiff's argument under this head is based in part, perhaps mainly, upon the refusal of the court to charge that plaintiff's delay was—

"such an unreasonable delay as to amount to an intimation of intention to abandon and altogether refuse performance,"

—and the case of *West* v. *Bechtel,* 125 Mich. 144 (51 L. R. A. 791) is cited in support.  In that case the court considered the effect upon the contract of the failure of one party thereto to make payments on account of partial deliveries in accordance with its terms. It is, we think, clear that plaintiff was under obligation to do the pile driving, pit digging, and pile cutting before defendants were obliged to perform the part of the work covered by their contract.  In other words, the performance of that part of the work to be performed by the plaintiff was a condition precedent to the undertaking of the performance of defendants' work.  This obligation rested upon plaintiff as certainly as though it had been so definitely expressed in the contract.  *Allamon* v. *Mayor of Albany,* 43 Barb. (N. Y.) 33; *Black* v. *Woodrow,* 39 Md. 194; *Morier* v. *Moran,* 58 Ill. App. 235.  A careful perusal of the charge in its entirety, and it must be so read, convinces us that plaintiff's rights were fully protected and all proper requests either given or covered therein.

3. Our conclusions reached under 2 dispose of the assignments of error under this head.

4. An examination of the evidence upon which assignments of error under this head are based indicates that when appealed to the court held with counsel for plaintiff; in one instance saying:

"The objection is sustained.  I do not think that makes any difference and need not be considered by the jury."

We find no reversible error in the conduct of the trial in this respect.

The judgment is affirmed.

BIRD, C. J., and MOORE, STEERE, FELLOWS, STONE, and KUHN, JJ., concurred.

The late Justice OSTRANDER took no part in this decision.